## METROPOLITAN DEVELOPMENT AND HOUSING AGENCY, Plaintiff-Appellee,

### v.

## BROWN STOVE WORKS, INC., Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 29, 1982.

Permission to Appeal Denied by Supreme Court Aug. 30, 1982.

George E. Barrett, Charles R. Ray, and Linda Ross Butts, Barrett & Ray, P.C., Nashville, for plaintiff-appellee.

Ray H. Moseley and K. Stephen Powers, Humphreys, Hutcheson & Moseley, Chattanooga, Charles C. Trabue, III, Trabue, Sturdivant & Dewitt, Nashville, for defendant-appellant.

### OPINION

CONNER, Judge.

The dispositive question in this interlocutory appeal is the application of the doctrine of "former suit pending." Defendant-appellant, Brown Stove Works, Inc.,[1] is a manufacturer of cooking ranges located in Cleveland, Tennessee. Plaintiff-appellee, Metropolitan Development and Housing Agency (MDHA), is a public housing facility located in Nashville, Tennessee.

On October 5, 1978, MDHA sent Brown Stove a "Request for Price Quotation" for supplying 2,123 gas ranges. On October 21, 1978, Brown Stove returned the bid form accompanied by a letter setting forth various exceptions to the specifications requested by MDHA. On or about November 13, 1978, at MDHA's request, Brown Stove sent two sample gas ranges of the models with an electric ignition feature to Nashville for inspection by MDHA. Thereafter, notwithstanding Brown Stove's prior advice to MDHA that an electric ignition system would cause great problems, MDHA sent its first order to Brown Stove dated November 29, 1978. Shipments began on December

---

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

20, 1978, and were completed on March 31, 1979.

As predicted, MDHA began experiencing problems with the electric ignition feature on the ranges while still under warranty. Brown Stove supplied warranty services to MDHA, and after its expiration, MDHA purchased replacement parts for the ranges. Finally, on April 27, 1981, or after MDHA had accepted and used the ranges for nearly two and one-half years, MDHA notified Brown Stove that it was "revoking acceptance" and "rescinding the contract."

The parties engaged in extensive efforts to settle their dispute and at one point were apparently very close, all to no avail. Finally, according to Brown Stove, MDHA threatened to have Brown Stove barred from participation in federal housing contracts. Brown Stove then filed suit seeking a declaration of the contractual rights and responsibilities of the parties in the Chancery Court for Bradley County on July 7, 1981.

Counsel for Brown Stove immediately notified counsel for MDHA of the institution of that suit and MDHA was served with process therein on July 9, 1981. MDHA did not then make, nor has it since made, any appearance whatsoever in the Bradley County proceeding.

Rather, on July 15, 1981, MDHA brought suit in the Chancery Court for Davidson County against Brown Stove "seeking remedies pursuant to the Uniform Commercial Code, Tennessee Code Annotated, §§ 47–2–101 et seq.; for recission of a contract; and for tortious misrepresentation." Plaintiff simultaneously filed a "Motion for Restraining Order" asking the Davidson County chancellor to restrain the defendant from proceeding in its previously filed declaratory judgment action in the Chancery Court for Bradley County. Upon request of Brown Stove based upon notification from counsel for MDHA that it would make no appearance in the Bradley County proceeding, the Bradley County chancellor had, prior to the Davidson County filing, ordered MDHA, on July 13, 1981, to appear on July 30, 1981, and show cause why it should not

be enjoined from prosecuting litigation involving the same parties, contract and issues in any other forum. Brown Stove appeared specially in the Chancery Court for Davidson County and moved to dismiss that action, without prejudice, on the ground that a former suit was pending between the parties in the Chancery Court for Bradley County concerning exactly the same issues.

Nevertheless, the Davidson County chancellor granted the July 15, 1981, motion of MDHA and entered a "Temporary Restraining Order" on July 17, 1981, restraining Brown Stove from proceeding in Bradley County.

On July 24, 1981, in the Davidson County proceeding, MDHA filed a motion to modify the "Temporary Restraining Order," *nunc pro tunc,* to be made a temporary injunction. Before the motion was heard, on August 3, 1981, the Bradley County chancellor entered a "Temporary Injunction Order" enjoining MDHA "from proceeding in any way or manner in furtherance of the Nashville case" after MDHA had failed to.appear for the July 30, 1981, show cause hearing. That order was prepared by counsel for Brown Stove more than fifteen days after the entry of the Davidson County temporary restraining order.

On August 4, 1981, MDHA filed a "Petition for Contempt" asking the Davidson County chancellor to order legal counsel for Brown Stove to appear and show cause why they should not be adjudged in contempt of the temporary restraining order entered by the court on July 17, 1981. In the petition MDHA also moved for an order directing the defendant and its counsel to dismiss the Bradley County action. An "Order to Show Cause" was granted setting the hearing on that petition for August 13, 1981. That hearing was subsequently rescheduled to August 21, 1981.

On August 12, 1981, counsel for Brown Stove informed counsel for MDHA that he would seek a default judgment in the Bradley County action on August 17, or as soon thereafter as possible. Plaintiff then filed a "Supplemental Petition for Contempt"

based upon this action by Brown Stove's counsel.

Prior to the show cause hearing on August 21, 1981, the defendant filed an answer to the petition for contempt and the supplemental petition for contempt. Brown Stove denied that it had participated in or appeared for the show cause hearing in Bradley County on July 30, 1981, due to the existence of the Davidson County temporary restraining order. Further, the defendant quoted statements made by the Davidson County chancellor at the hearing on July 17, 1981, of the motion for temporary restraining order in explanation of the reasonable belief that the chancellor had assumed that MDHA would have to appear at the show cause hearing set in Bradley County on July 30, 1981—even though it did not—especially since the chancellor had not ordered Brown Stove to dismiss its Bradley County action. The reference was to the following statement made by the Davidson County chancellor: "I'll honor his [the Bradley County chancellor's] ruling. If he thinks I'm wrong, I'll reverse myself."

At the hearing of August 21, 1981, the Davidson County chancellor stated that, indeed, there might have been some confusion as to what the court was ordering with respect to the show cause hearing set in Bradley County. Nevertheless, the Davidson County chancellor found that the notice sent by counsel for Brown Stove of his intent to seek a default judgment in the Bradley County action was a violation of the temporary restraining order. That court therefore ordered Brown Stove to file a written notice of dismissal in the Bradley County suit pursuant to T.R.C.P. 41. This Brown Stove did. Brown Stove thereupon sought and received permission for an interlocutory appeal.

By order of September 14, 1981, the Davidson County chancellor ruled that the bases for the MDHA's petition for contempt and supplemental petition for contempt had been purged by Brown Stove's filing of the T.R.C.P. 41 notice of dismissal in the Bradley County action and, therefore, denied the petitions for contempt. Further, the court granted the plaintiff's motion to modify the temporary restraining order, *nunc pro tunc,* to a temporary injunction and denied the defendant's motion to dismiss on the ground of former suit pending.

The defendant applied for permission to appeal under T.R.A.P. 9 and by order entered September 24, 1981, this court granted the interlocutory appeal.

Brown Stove raises five issues. However, to resolve this matter it is only necessary that we deal with one: Did the doctrine of former suit pending, properly raised, bar the institution by MDHA of the Davidson County chancery suit while the Bradley County chancery suit was pending? We believe, beyond peradventure, that the answer to that question is "yes."

The doctrine of former suit pending has prevailed in this jurisdiction for over one hundred years. In *Clark v. Garrett,* 74 Tenn. 262, 266–267 (1880), our supreme court held that a complaint seeking relief upon issues undetermined in a pending suit between the same parties must be dismissed upon the defendant's plea of former suit pending. *Gibson's Suits in Chancery* states the rule as follows:

> ... In Courts of concurrent Equity jurisdiction, the one that first acquires jurisdiction thereby obtains exclusive jurisdiction. If, therefore, there be a suit pending, in another Court of concurrent Equity jurisdiction, between the same parties, concerning the same subject matter, and for the same object, the defendant to the second suit may plead the pendency of the former suit as a defence (sic) to the second suit. ...

§ 335 (5th Ed. 1955). *Accord, Williamson v. Laughlin,* 192 Tenn. 580, 584, 241 S.W.2d 576, 578 (1951). The rule has been stated in slightly different terms over the years but with a very uniform meaning. As an example, in *American Lava Corp. v. Savena,* 476 S.W.2d 639, 640 (Tenn. 1972), it was held that the authority of the first court acquiring jurisdiction of the subject matter and the parties continues until the matters in issue are disposed of, *and no court of coordinate authority is at liberty to inter-*

*fere with its action.* In *Kizer v. Bellar,* 192 Tenn. 540, 546, 241 S.W.2d 561, 563 (1951), the holding was that when courts have concurrent jurisdiction, the one that first acquires jurisdiction thereby acquires exclusive jurisdiction, and only the first suit can be allowed to stand. In *Casone v. State,* 176 Tenn. 279, 285, 140 S.W.2d 1081, 1083 (1940), the court noted "that when two courts have concurrent jurisdiction of a particular subject matter that tribunal which first obtains jurisdiction retains it."

The supreme court in *Cockburn v. Howard Johnson, Inc.,* 215 Tenn. 254, 385 S.W.2d 101 (1964), stated the prerequisites which must exist for the second suit to be abated on the ground of a former suit pending:

"The essentials of such a plea are that the two suits must involve the identical subject matter and be between the same parties and the former suit must be pending in a court in this state having jurisdiction of the subject matter and the parties. A plea, whether it be in abatement or in bar, must contain these elements."

*Id.* at 256–257, 385 S.W.2d at 102.

This court has previously held that a plea of former suit pending must be sustained in a case analogous in the sense that it involved efforts by the litigants to do legal battle in two separate chancery courts. In *Tallent v. Sherrell,* 27 Tenn.App. 683, 184 S.W.2d 561 (1944), the plaintiff, Will Tallent, filed an action in the Chancery Court for Lincoln County, Tennessee, seeking an accounting and settlement of a partnership farming operation. While this suit was there pending, the defendant, H.M. Sherrell, brought an action to recover possession of the farm before a justice of the peace in Giles County. After the justice of the peace had awarded possession to Sherrell, Tallent filed suit in the Chancery Court for Giles County to set aside the judgment of the justice of the peace. To this action, the defendant pleaded in bar the former suit pending in the Chancery Court for Lincoln County between the same parties covering the same subject matter. The chancellor sustained the plea and dismissed the Giles County action.

This court affirmed the dismissal of the second suit, reasoning:

... The Chancery Court of Giles County and the Chancery Court of Lincoln County have concurrent equity jurisdiction. The Chancery Court of Lincoln acquired jurisdiction of these questions before the present suit was brought in Giles County. The two suits were between the same parties, concerning the same subject matter, and for the same object as far as these issues are concerned. Under these circumstances, it is the rule that the court which first acquires jurisdiction takes exclusive jurisdiction to settle the issue between the parties. *Indeed, the rule has this further extension, that all issues which are made or might be made concerning the same subject matter must be determined in that Court which acquires jurisdiction first....* (Emphasis supplied.)

*Id.* at 688–689, 184 S.W.2d at 563.

Applying the rule of *Tallent v. Sherrell* to the case at bar, the Chancery Court for Bradley County first acquired jurisdiction of the parties and issues involved. It is undeniable that said court had jurisdiction of the subject matter and the parties. Our supreme court has made clear the distinction between the *jurisdiction* of our circuit court and the *venue* of an action:

It is undisputed and indisputable that the Circuit Court has jurisdiction of this controversy. Tennessee has only one circuit court—court held by fifty-one circuit judges, in twenty-nine circuits, and in ninety-five counties. A county does not have a circuit court. The State has a circuit court which sits in the various counties.

*Mid-South Milling Co., Inc. v. Loret Farms, Inc.,* 521 S.W.2d 586, 590 (Tenn. 1975). *See also Id.* at 590, Footnote 2.

In this same regard Tennessee has only one chancery court which also sits in the various counties. The chancery court has jurisdiction over MDHA, and the legislature has provided that MDHA has both the power to sue or be sued. T.C.A. § 13–20–

105(25). In this instance, MDHA was sued in Bradley County and did not file its own suit until almost one week after it had been served with process in the Bradley County action. Moreover, MDHA could—indeed, it must—have raised any issues and allegations it desired in its answer or by counterclaim in the Bradley County suit. *See Tallent v. Sherrell, supra. See also* T.C.A. § 29–14–108, which provides relative to declaratory judgment actions that when it is necessary to decide on issue of fact:

> ... such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions *in the court in which the proceeding is pending.* (Emphasis supplied.)

Instead, MDHA totally ignored the Bradley County Chancery Court and filed this second suit in the Chancery Court for Davidson County involving exactly the same parties and subject matter.

MDHA argues (and argued in the *Davidson* County Chancery Court) that the Brown Stove action in Bradley County is "repugnant to and a perversion of the Declaratory Judgment Act." MDHA further contends that as the "real plaintiff" it has the right to determine the time and forum in which to bring its action. To the contrary, Brown Stove argues that the act, which is to be liberally construed, was designed precisely for a situation such as this where a party is unsure of exactly what its rights and duties are and thus, seeks a determination thereof.

MDHA further contends (and contended in the *Davidson* County Chancery Court) that venue lies in Davidson, not Bradley County. Brown Stove contends to the contrary.

MDHA treats these issues as paramount and in our opinion it is here that MDHA and the Davidson County chancellor are in error.

In our view the threshold question is *in what forum* must these defenses be raised, suit having first been filed in Bradley County, a court with unquestioned jurisdiction, between the same parties and involving the

same subject matter as the Davidson County suit? Under the doctrine of former suit pending the forum must be the Bradley County Chancery Court. The existing statutory and case law and the Tennessee Rules of Civil Procedure all presuppose the correctness and the application of this doctrine. *See Gibson's,* § 335, and the cases cited thereafter, *supra* at pp. 878–879. *See also* T.C.A. § 20–4–105 which provides that:

> *Objection to venue.*— If action be brought in the wrong county, *it may be prosecuted to a termination, unless abated by the plea of the defendant.* (Emphasis supplied.)

In addition to the express language of the statute, numerous Tennessee decisions have held, consistent with the vast preponderance of jurisprudence from other jurisdictions, that that venue is waivable if not raised as a defense *in the court wherein suit is brought. Martin v. Martin,* Tenn.App. (filed February 18, 1982, at Nashville); *Kane v. Kane,* 547 S.W.2d 559 (Tenn. 1977); *Corby v. Mathews,* 541 S.W.2d 789 (Tenn. 1976). See the excellent discussion of the difference in jurisdiction and venue in *Venue—Localizing Transitory Actions in Tennessee Civil Proceedings,* 35 Tenn. L. Rev. 520, 523–524 (1968). There it is noted that jurisdiction and venue are fundamentally different. Jurisdiction relates to physical power over person or property, while venue merely determines whether a court having the requisite power is an appropriate place for trial. Finally, *see further* T.R.C.P. 12.02 which provides in terms too clear for misunderstanding as to how to defend against any suit brought against a defendant.

### RULE 12

### DEFENSES AND OBJECTIONS: WHEN AND HOW PRESENTED: BY PLEADING OR MOTION: MOTION FOR JUDGMENT ON PLEADINGS

12.02. *How Presented.*— Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party

claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, ... A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . .

Though both parties herein have exhaustively argued the questions of whether the declaratory judgment suit was properly brought and MDHA has extensively argued the matter of venue, these arguments are premature and are as equally misplaced here as they were in the Davidson County Chancery Court. In the first instance these questions must be heard and decided by the Chancery Court of Bradley County, the court which first acquired jurisdiction of these parties and this dispute.

If either party believes that that court has decided those issues—or any others—incorrectly, the doors of the eastern section of this court will be open as of right and the supreme court thereafter.

MDHA relies on *Louisville & Nashville R.R. Co. v. Ragan,* 172 Tenn. 593, 113 S.W.2d 743 (1938) in its assertion that the doctrine of former suit pending does not apply and that the Davidson County Chancery Court had the authority to enjoin prosecution of the Bradley County suit. We believe this reliance is misplaced. In *Ragan* the Tennessee Supreme Court noted that all witnesses to an alleged accident lived in Nashville; that, if required to try the suit in Missouri, where initially filed, the railroad company would be required to transport and pay the expenses of these witnesses; and that, since many were railroad employees, their absence to attend such proceedings would disrupt railroad services. The court concluded that trial of the case in Missouri would be "generally oppressive" to the railroad company and recognized that "prosecution of this suit could doubtless be abated or restrained in the Missouri courts." The question, then, was "whether the Chancery Court in Tennessee will interfere by

injunction to restrain" the prosecution of the Missouri action. *Id.* at 596, 113 S.W.2d at 744. The supreme court concluded that the suit brought against the railroad company in Missouri "must be regarded as oppressive and, as such, calling for injunctive relief against its prosecution." *Id.* at 597, 113 S.W.2d at 744.

We find the instant situation far different from *Ragan.* There is nothing "generally oppressive" in MDHA having to appear in the Bradley County Chancery Court. Cleveland, Tennessee, the Bradley county seat, is at most three and one-half hours drive down the interstate from Nashville and less than one hour by air. Some witnesses to this litigation will obviously come from Cleveland, some from Nashville. This is a far different situation than existed in *Ragan* where the dispute involved the courts of two states, where the Tennessee court found that all the witnesses lived in Nashville and that to have to travel to Missouri for trial would be disruptive of railway service during the 1930's when the railroad was the primary mode of transportation. Further, a trip in the 1930's by any method was materially more difficult than now. We are not at all sure that in today's world with modes of travel materially changed and simplified that the supreme court would reach the same result if again presented with the facts of *Ragan.*

In any event counsel for MDHA has cited no authority where the doctrine of former suit pending has not been applied in a situation such as this where there are two suits filed within the same state in courts of concurrent jurisdiction between the same parties concerning the same subject matter. We daresay none exists. If this were not so, a party sued in a forum deemed "inconvenient" could, in the first instance, ignore the processes of the first court, find a forum "closer to home" and bring suit therein. The result to our system of justice would be chaos.

No party may ignore the fact of suit against it where there is *in personam* and subject matter jurisdiction. Even if the party questions jurisdiction (and we can

find no conceivable basis here), our jurisprudence requires that question to be raised in the court where suit was filed. *See* T.R.C.P. 12.02, *supra.*

The doctrine of "former suit pending" must be left in tact if the judiciary is to maintain its integrity. The continued existence of order in our society depends upon and presupposes a judicial system of unquestioned authority and rank. No person, whether a private citizen or a public agency, can be allowed to ignore or wink at the legal process issued by any court. The basis for the concept of former suit pending lies in these fundamental principles, and the doctrine must be applied in situations such as this.

MDHA contends, and the chancellor found below, that to allow the precedence of the Bradley County action will encourage "forum shopping" and/or a "race to the courthouse." We cannot agree with this logic. If Brown Stove is entitled to have this matter tried in Bradley County, its diligence in pursuing a remedy there should not be punished. If Brown Stove is not entitled to prosecute its action there—either because of misuse of the declaratory judgment statute, improper venue, or otherwise—then we must presume that the Bradley County chancellor will so hold. But the decision on those questions must remain with that forum in the first instance and not with the Davidson County chancellor. In our view, the need to discourage improper forum shopping and/or races to the courthouse pales when measured against the necessity to preserve the principle of "former suit pending."

The original order restraining Brown Stove from proceeding with the Bradley County action should have never issued. Further, it was error for the Davidson County chancellor to order a T.R.C.P. 41 dismissal of that action. Brown Stove's motion to dismiss the Davidson County action on the basis of former suit pending should have been granted.

In view of the extremely confused state of this matter brought about by MDHA's efforts to resist the Bradley County suit in Davidson County only and the Davidson County chancellor's ultimate requirement that Brown Stove dismiss its Bradley County action under T.R.C.P. 41 to purge itself of contempt, framing appropriate relief is difficult. However, we shall try based upon two premises: first, that there never should have been a Davidson County chancery suit while the Bradley County chancery suit was pending; and second, that MDHA should nonetheless have the right to raise all its defenses and/or counterclaims in the Bradley County court, as it should have done in the beginning.

Accordingly, this cause is reversed, remanded and dismissed subject to reinstatement of the Bradley County chancery suit filed by Brown Stove against MDHA or its refiling, as may be required by the Bradley County chancellor. Provided that in the event of reinstatement, Brown Stove shall consent to the setting aside of the default against MDHA and shall further consent to allow MDHA sufficient time to raise any and all objections, defenses and/or counterclaims which it may choose to the Bradley County suit therein. Brown Stove's consent shall be conditioned upon the payment by MDHA of the accrued costs in that proceeding. The dismissal of the Davidson County action shall be without prejudice to refiling if Brown Stove does not pursue the Bradley County action or it shall ultimately be determined that the Bradley County suit is improper either as to form or forum after that determination may be made in the Chancery Court of Bradley County or on appeal therefrom. However, MDHA is enjoined from filing any further action in this matter in Davidson County or elsewhere for sixty (60) days to allow Brown Stove to obtain the reinstatement of the Bradley County chancery action under the conditions stated herein or to refile suit therein. The costs are taxed to MDHA.

REVERSED, REMANDED AND DISMISSED.

TODD, P.J. (M.S.), and LEWIS, J., concur.